USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1501 CAMERON JENNINGS DODSON, Plaintiff, Appellant, v. JANET RENO, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Cameron Jennings Dodson on brief pro se. _______________________ Guillermo Gil, United States Attorney, and Agnes I. Cordero, ______________ _________________ Assistant U.S. Attorney, on brief for appellees. ____________________ September 11, 1997 ____________________ Per Curiam. Appellant Cameron Dodson ("Dodson") brought __________ this action pursuant to Bivens v. Six Unknown Named Agents of ______ ___________________________ the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Dodson _______________________________ was convicted of being a felon in possession of a firearm. He is serving his sentence at the Metropolitan Detention Center in Guaynabo, Puerto Rico ("MDC Guaynabo"); he previously served time on this conviction in three federal prisons, but he was moved to MDC Guaynabo after being attacked by inmates associated with the prison gang known as the "Aryan Brotherhood" ("AB"). Dodson has alleged several constitutional claims pertaining to his incarceration, but for the purposes of this appeal, we are mainly concerned with two of them. First, Dodson claims that officials at MDC Guaynabo and the federal Bureau of Prisons plan to transfer him to United States Penitentiary in Marion, Illinois ("Marion") in violation of the Eighth Amendment. Second, he claims that the same officials have deliberately kept him at MDC Guaynabo to retaliate against him and his family for writing various letters protesting the conditions of his confinement. We discuss these two claims first and then address Dodson's remaining constitutional claims. 1. Dodson's Eighth Amendment claim regarding a transfer to Marion has two branches. First, he claims that prison officials at Marion would place him in segregation for the -2- remainder of his prison term in order to protect him from assaults by the numerous AB members at Marion, and that such segregation would violate the Eighth Amendment. Second, he claims that even in segregation, he would be assaulted and probably killed by AB members. Dodson has sought various remedies based on this claim, including an injunction against a transfer to Marion, monetary damages from the officials who planned to transfer him, an injunction against a transfer to any federal penitentiary in the United States, an order that the Bureau of Prisons transfer him to a Washington state facility, an order to federal officials to prosecute prison and federal officials for violating his civil rights, and monetary damages for violations of civil rights. We are troubled by the allegations in this case, although the record is admittedly underdeveloped. It appears that prison officials did seek to transfer Dodson to Marion, even though Marion typically houses prisoners who have serious records of institutional violence or otherwise require unusually heightened security, criteria that Dodson apparently does not meet. The government argues that it abandoned the transfer when it became clear that Marion was not an appropriate setting for Dodson, but the timing of this abandonment raises the possibility that the transfer was abandoned only upon Dodson's initiation of this lawsuit. Dodson has also made plausible albeit unsubstantiated -3- allegations that efforts to transfer him to Marion will resume when this case concludes. Dodson alleges that he could add substance to these allegations if allowed to undertake discovery.  The district court held that Dodson's claims regarding Marion were mooted by the abandonment of the transfer. The government has represented that there are no existing plans to transfer Dodson to Marion or to any other facility in the United States, and there is no substantial evidence to the contrary. We therefore agree with the district court that Dodson has no live claim for an injunction, let alone monetary damages, regarding a transfer to Marion that did not materialize, and we do not reach the merits of Dodson's Eighth Amendment challenges. The district court did not abuse its discretion in denying discovery.  Dodson is free to initiate his lawsuit again to bar a transfer to Marion if the government renews its transfer effort. We note that we would view it as bad faith for the government to resume its attempt to transfer Dodson to Marion without giving him notice and an opportunity to reapply for an injunction. The district court's dismissal is plainly without prejudice to a new lawsuit if the threat is renewed. 2. Dodson's retaliation claim rests on a different factual predicate. Dodson claims that federal Bureau of Prisons officials have been retaliating against him for -4- writing letters complaining of his treatment throughout his incarceration. He claims this retaliation has occurred not in the form of the proposed transfer to Marion but in the form of continued detention at MDC Guaynabo and refusal to transfer him to a facility in the continental United States. Specifically, Dodson has repeatedly requested that he be transferred to a facility in Washington so that he can be near his family. The district court did not directly address the retaliation claim and apparently treated it as a due process claim unsoundly premised on the notion that Dodson had a right to choose his place of incarceration. This confusion is understandable because Dodson's original complaint did not expressly state a claim of retaliation. However, given that Dodson apparently argued the retaliation claim below in detail and in light of our obligation to construe pro se ______ pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 520 ___ ______ ______ (1972), we will treat Dodson's complaint as amended and address the retaliation claim here. As the district court stated, there is no constitutional right to be incarcerated in a particular facility. However, Dodson may state a constitutional claim if his requests for transfers were denied in retaliation for activity protected by the First Amendment. See Sandin v. Conner, 115 S. Ct. ___ ______ ______ 2293, 2302 n.11 (1995); McDonald v. Hall, 610 F.2d 16, 17-18 ________ ____ -5- (1st Cir. 1979). In order to defeat summary judgment, Dodson must produce some admissible evidence that indicates that he is being kept in Puerto Rico in retaliation for his letter- writing. Here, Dodson has made factual allegations that, if true, would certainly prove that prison officials harbor animosity toward him. However, Dodson has made no showing that suggests that this animosity is what is keeping him at MDC Guaynabo. Dodson's strongest evidence is an alleged statement by MDC Guaynabo's Assistant Warden Tombone that, if he did not stop writing letters, the Bureau of Prisons would "spin" him (i.e., transfer him through several prisons in ____ rapid succession). There is no indication that this ever happened. The connection between this hearsay expression of retaliatory motive and Dodson's continued incarceration at Guaynabo is tenuous at best. Dodson's further allegations that MDC Guaynabo is a pretrial facility and that no other long-term prisoners have remained there over a year are, in this case, largely irrelevant to the issue of retaliatory motive. Given the prior attacks on Dodson elsewhere in the prison system, unusual measures were obviously necessary. Indeed, it is quite plausible to conclude that Dodson has been kept at MDC Guaynabo in order to protect him from AB attacks. _______ -6- Of course, Dodson's lack of evidence of retaliatory motive is partly due to the district court's refusal to allow Dodson to undertake discovery. Although this is a close issue, we hold that the district court did not abuse its discretion in denying further discovery on the retaliation claim. See Mattoon v. City of Pittsfield, 980 F.2d 1, 8 (1st ___ _______ __________________ Cir. 1992). We therefore affirm the district court, but in view of his pro se status modify the judgment to reflect that ______ the dismissal is without prejudice. 3. Dodson also raises certain other claims, which the district court correctly dismissed with prejudice. Dodson claims that keeping him at MDC Guaynabo violates due process and equal protection principles because most inmates are Spanish-speaking, there are few programs that are relevant to his rehabilitation, and it is located thousands of miles from his family in Washington State. However, Eighth Amendment limitations aside, an inmate has no general right to demand that his incarceration meet particular conditions. See ___ Meachum v. Fano, 427 U.S. 215, 224-25 (1976). _______ ____ Dodson also seeks monetary damages from federal officials for failing to protect him from previous assaults by AB members while he was in federal custody. However, he has not named any defendants who would have been responsible for his placement in the general population of prisons where these assaults took place. Dodson cannot sue supervisory -7- officials of the Bureau of Prisons on a theory of respondeat superior. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d ___ ___________________ _________ 553, 562 (1st Cir. 1989). Finally, Dodson claims the right to physical access to the MDC Guaynabo prison law library. It appears that Dodson has access to the library through written requests for law books; the prison has security regulations barring inmates from physical access at will. An inmate does not have a right to access a law library unless restrictions on access impair his ability to assert legal challenges. See Lewis v. ___ _____ Casey, 116 S. Ct. 2174, 2182 (1996). Similarly, this court _____ has no authority to appoint counsel in this civil suit. See ___ Mallard v. United States District Court, 490 U.S. 296 (1989). _______ ____________________________ To conclude: the dismissal as moot of Dodson's Eighth Amendment claim for injunctive relief against a transfer to Marion is affirmed on the understanding that the dismissal is ________ without prejudice as to reassertion of the claim in the event of a new threat to transfer him. Dismissal of Dodson's retaliation claim is also affirmed without prejudice as to ________ reassertion if Dodson obtains evidence of a retaliatory motive for keeping him at MDC Guaynabo. In all other respects the district court's judgment of dismissal with prejudice is affirmed. ________ It is so ordered.  ________________ -8-